OPINION OF THE COURT
Herbert Kramer, J.
Must the bank provide notice to the court when it enters into a forbearance agreement with its mortgagor in the course of a foreclosure proceeding?
This court holds, for the reasons that follow, that every forbearance agreement must be filed with the Clerk of the Court and if a violation of the forbearance agreement occurs and the foreclosure proceeding is therefore resumed, where the mortgagor has made payments under the agreement, then plaintiff must petition the court to appoint a referee to recalculate the amount due under the mortgage taking those payments into account.
Proceeding apparently upon the maxim that what the court does not know will not hurt it, the plaintiff bank in this matter entered into a forbearance agreement with its debtor, but did not file the agreement with the County Clerk. When the debtor was unable to make the agreed upon payments under the forbearance agreement, the plaintiff renewed its foreclosure action for which a judgment had been entered and re-served the judgment with notice of entry. However, the plaintiff never indicated in the renewed action the existence of a forbearance agreement and never sought to have the judgment amount recalculated to include the nearly $29,000 in payments that the mortgagor had made in accordance with the forbearance agreement.
It was not until the defendant moved to vacate the default that the existence of the forbearance agreement came to light. It is in this posture that this court considers the defendant’s motion to vacate the default judgment. Defendant’s reason for the default was that he relied upon his frequent discussions with the plaintiff and was not represented at that time and did not believe he would have to come to court and as to his meritorious defense, defendant acknowledges that the plaintiff is entitled to a judgment but was unadvised when he entered *322 into the forbearance agreement* and did not realize its implications and now disputes the amount of the judgment entered since it does not reflect the substantial payments he made under the forbearance agreement.
This court is currently taking a long hard look at all aspects of the foreclosure process, cognizant of its potential for abuse as amply demonstrated by the current subprime mortgage crisis. The forbearance agreement is a part of this process that deserves scrutiny. While it has many salutary aspects in that it can revive a failing mortgage it also has a darker side in that it can provide a repository for payments that may not be properly credited should the agreement fail and the foreclosure proceed apace. Moreover, since foreclosure proceedings could in theory hang in limbo while a forbearance agreement plays itself out, the interest of the court in efficiently and transparently managing its caseloads is implicated.
*323 A forbearance agreement constitutes a settlement of the foreclosure action (Credit-Based Asset Servicing & Securitization v Grimmer, 299 AD2d 887 [4th Dept 2002]), and as such must be filed with the court. (CPLR 2104.) Where parties enter into a settlement agreement, such agreement “terminates all of the claims of the parties theretofore made in the action, and the agreement becomes enforceable as a contract binding on all the parties thereto.” (Charles A. Gaetano Constr. Corp. v Citizens Devs, of Oneonta, 175 AD2d 465, 466 [3d Dept 1991].) However, where as here the terms of the settlement agreement provide that the foreclosure action is not terminated but is only postponed, then the foreclosure action remains pending during the life of the forbearance agreement. (Id.) However, the fact that the foreclosure action remains dormant under these circumstances does not alter the fact that the forbearance agreement settles the matter.
A forbearance agreement which is a settlement of the matter must be filed with the court. Although a forbearance agreement, by its terms, may relieve the bank of notifying or reserving the mortgagor when it wants to reinstate the foreclosure proceeding, the orderly process of the court requires that the bank inform the court of the existence of the agreement and that the settlement be recorded and the case dealt with in the ordinary course which means that the case would be marked “disposed.”
In the instant matter, a judgment was entered by the bank which was silent as to the existence of a forbearance agreement and silent as to the payments that were made. The implications of this silence are ominous. First, there is a very real possibility that the sums charged to the defendant for the forbearance agreement were usurious. In order to prevent the enforcement of the judgment of foreclosure the defendant was required to make a lump-sum payment of $20,000 and to make substantially increased monthly payments thereafter. These sums could translate into an annual rate of interest that is usurious, at least insofar as concerns the one-year period in which the agreement was signed. (See General Obligations Law § 5-501; Banking Law § 14-a; see also Matias v Arango, 289 AD2d 459 [2d Dept 2001].) Secondly, and perhaps even more significantly, there is the very real danger that materialized here, that the payments made under this agreement never were properly credited.
Thus, while a forbearance agreement by its terms may permit the revival of the foreclosure proceeding without further notice *324 to the mortgagor, the parties in their agreement cannot and in fact do not waive the requirement of notice to the court of the existence of such an agreement. And while ordinarily a mortgagor will not be able to vacate or defend a foreclosure proceeding in reliance upon the existence of a forbearance agreement (Trustco Bank N.Y. v Drake, 195 AD2d 665 [3d Dept 1993]; Option One Mtge. Corp. v Corman, 39 AD3d 724 [2d Dept 2007]; Olympia Mtge. Corp. v Ramirez, 9 AD3d 401 [2d Dept 2004]; see generally Awad v Severino, 122 AD2d 242 [2d Dept 1986]), where, as here, the plaintiff has not acted in conformity to statute and rule and has neither acknowledged nor credited the payments made under the agreement, the circumstances militate for a vacatur of the judgment. (See e.g., Gallo v Bosco, 13 AD2d 982 [2d Dept 1961].)
Accordingly, the defendant’s motion is granted and the judgment is vacated.

 The forbearance agreement recites that
“If foreclosure action relating to your loan has commenced it will not be canceled, but will be postponed by Countrywide provided there is no default by you under this Agreement. If you fail to comply with each and all of the terms and conditions of this Agreement, this Agreement, at Countrywide’s option, shall terminate immediately and automatically without further notice to you and, except as otherwise provided herein, shall be of no further force and effect. In such case, all amounts that are owing under your loan shall become immediately due and payable, and Countrywide shall commence or continue, as the case may be, foreclosure proceedings or take such other action as is permitted by law. If we previously notified you that your loan is (or will be) accelerated and/or due in full, it remains accelerated and/or due in full . . . Countrywide’s acceptance of any payments from you which, individually or collectively, are less than the total amount due to cure your default shall in no way prevent Countrywide from continuing with the foreclosure action or require Countrywide to re-notify you of your default, re-accelerate your loan, issue any notice or recommence any process prior to Countrywide’s proceeding with foreclosure action . . . .”
This statement in sum and substance is set forth again at the end of the agreement.
When the defendant defaulted in the payment of his March 1, 2005 installment, the plaintiff commenced this foreclosure proceeding on June 29, 2005. An application for an order of reference was granted on March 22, 2006. In October of 2006, defendant entered into a forbearance agreement which by its terms required the defendant to make a $20,000 down payment and make monthly payments of $2,950 until the arrears were paid up to date. The defendant made a payment of $20,000 in October of 2006 and continued to make payments until February of 2007 but defaulted on his March 2007 payment and the foreclosure proceedings were continued.